BEULAH ROSE NELSON, *et al.,* v. STOCKTON MORTGAGE COMPANY, NEW YORK LIFE INSURANCE COMPANY

175 So. 770.
Opinion Filed July 31, 1937.

*Ira C. Hopper,* for Appellants;

*Bryant & Trantham* and *C. V. McClurg,* for Appellees.

TERRELL, J.—In September, 1925, R. W. Weaver made a contract with A. Y. Oates to construct a residence on three city lots located in Lakeland, Florida. which he had agreed to purchase and on which he had paid substantial amounts. As one feature of the contract, Oates negotiated a loan for Weaver with Telfair Stockton Company to secure which Weaver and his wife executed a mortgage in favor of the latter describing the three lots on which Weaver had a contract to purchase but had not acquired the legal title. There was a lien for a portion of the purchase price and certain statutory liens outstanding against the lots when the mort-

gage for the loan in favor of Telfair Stockton Company was executed.

Said mortgage was executed June 1, 1926, recorded July 2, 1926, and Weaver died July 8, 1926, before the construction of the residence was completed and before the proceeds of the mortgage were delivered to the mortgagor and disbursed. The proceeds of the mortgage were paid to Bradford G. Williams, Executor of Weaver's estate, in November, 1926, and were used to pay the balance due on the purchase price of the lots, to remove the statutory liens outstanding against them, and to finance the construction of the residence.

Defaults occurred and in April, 1929, the mortgagee's assignee, Stockton Mortgage Company, instituted suit to foreclose naming the appellants here and others as defendants. To bill of complaint, Beulah Rose Nelson, nee Weaver (she having married Nelson in the meantime), entered a plea on behalf of herself and Reed Waldo Weaver, Jr., which was in substance that the lands described in the mortgage constituted the homestead of R. W. Weaver at the time of his death, that at his death the said homestead descended to his heirs, that the money secured by the mortgage was not paid until after his death and being so, the rights of the heirs had intervened and were superior to the lien created by the mortgage. The lower court adjudged said plea insufficient and overruled it. On appeal, this Court reversed the trial court (Nelson v. Stockton Mtg. Co., 100 Fla. 1191, 130 So. 764) primarily because the bill of complaint did not bring the case within the rule announced in Guaranty Title and Trust Co. v. Thompson, 93 Fla. 983, 113 So. 117, and Franklin Savings and Loan Co. v. Fisk, 98 Fla. 683, 124 So. 42.

On remand, the bill was amended and demurred to. The

chancellor sustained the demurrer and dismissed the bill. Complainant appealed and this Court again reversed the court below. Stockton Mortgage Co. v. Nelson, 114 Fla. 600, 154 So. 333. On second remand, the defendants answered the bill and thereby placed in issue the question of whether or not there was a parole agreement between Weaver and Telfair Stockton Company at the time the mortgage was executed for the latter to withhold the proceeds of the loan until such time as they could be disbursed in payment of the purchase money, statutory liens, and other charges against the property in such a way that the Telfair Stockton Company mortgage would be a first lien on the property. The court below held that such an agreement was established by the evidence and entered a final decree of foreclosure. This appeal is from that decree.

In the last appeal we held that such an agreement could be made and could be enforced if proven. The court below held that it was proven. That is the sole question with which we are confronted on this appeal. We previously held in effect that the mortgage could not be enforced against Weaver's heirs in the absence of proof of such an agreement.

To support the fact of a parole agreement to withhold the proceeds of the loan, appellee offered in evidence thirteen instruments among which were the contract between Weaver and Oates for the construction of the building, the application of Weaver for the loan, the probate proceedings in connection with the administration of Weaver's estate, and others. In addition to these exhibits, Bradford G. Williams was offered as a witness and gave testimony in support of the agreement.

Appellant contends that the evidence of Bradford G. Williams was inadmissible under Section 2705, Revised

General Statutes of 1920, Section 4372, Compiled General Laws of 1927, that none of the exhibits except five, six, and seven have any relevancy whatever to the alleged oral agreement and that these fall far short of proving that such an agreement was made. .   .

The exhibits have been examined and they show conclusively that the loan was made, that the mortgage was executed and was to be a first lien on the dwelling and lots, that there were purchase money, statutory and other liens against the property then in existence, that the proceeds of the loan were paid to the administrator at a later date and were used to extinguish all prior liens against the lots. These facts merely raise an inference that the proceeds of the loan were withheld until the residence was completed and all prior liens against the lots could be collected and paid in order that the Telfair Stockton Company mortgage become a first lien on the lots.   Standing alone they would not be sufficient to prove the parole agreement, but taken in connection with the evidence of Bradford G. Williams, the parol agreement was established.   His evidence was in no sense contradicted.

Neither do we think that Bradford G. Williams was disqualified under Section 4372, Compiled General Laws of 1927.   It is true that he had been executor of Weaver's estate and had been attorney for Stockton Mortgage Company, but at the time he testified, he had been discharged as executor.   If he had still been acting as executor, he would have been one of the exceptions named in the statute. Sanderson's Administrators v. Sanderson, 20 Fla. 292. But having been discharged and not shown to have had any interest in the result of the litigation as contemplated by the statute, he was not disqualified to testify.

Much has been said of his disqualification because of his

connection as attorney with Stockton Mortgage Company. This connection may affect the credibility of his testimony, but that was a matter for the chancellor to consider and give such weight as he saw fit. It in no way affects his competency to testify. If the parol agreement to withhold the proceeds of the loan for the purpose stated was actually made and proven, it would be grossly inequitable not to uphold it as the record shows conclusively that the loan was received and applied to relieve liens against Weaver's estate.

Having reached this conclusion, the controversy resolves itself into one of the sufficiency of the evidence to sustain the final decree of the chancellor. We find it ample for that purpose, so his decree is sustained.

Affirmed.

Ellis, C. J., and Whitfield and Brown, J. J., concur.

Buford, J., dissents.

Buford, J. (dissenting).—I think Bradford G. Williams was not qualified to testify as a witness under Sec. 4372 C. G. L. and without his testimony the decree cannot be sustained.